Plaintiff sues to recover workmen's compensation on the theory that on September 20, 1945, he experienced an accident while performing the duties of a contract of hiring with defendant which disabled him totally and permanently to do work of any reasonable character. He alleged that on said date he was hauling material in what is commonly called a "Georgia buggy", which carried a load of approximately five hundred pounds, and in attempting to move the buggy over rough surface "it suddenly jerked him and because of the weight of the load and the condition of the floor he was jerked with such force as to seriously and, he believes, permanently injure his back and to cause permanent and total disability". *Page 378 
Defendant denies that plaintiff had any accident while performing the duties under his employment with it which rendered him unable to do the work he was employed to do; and, further, denies that he is now or has been disabled to perform such duties.
The pleadings tender these issues for decision, to-wit: Was there an accident, and, if so, does plaintiff suffer disability therefrom of the character alleged?
The lower court ruled in favor of defendant and rejected plaintiff's demand. He appealed to this court.
The alleged accident, according to plaintiff's testimony, occurred about 4 o'clock a.m. in defendant's mill in Ouachita Parish. There were no witnesses to it. The buggy, as we understand the record description of it, consists of a body which rests upon two wheels and two legs, on either side of which, parallel to the floor, extended iron rods that serve as handles. These enable the person using the buggy to lift the legs clear of the floor and to push it forward or pull it backward.
At the time of the alleged accident the buggy was located under a chute through which passed particles of wood and bark that had been placed therein by workmen on the floor above. The buggy's body was full of this material. Its weight at the time is not definitely established by the testimony, but it was heavy. When the body was filled and ready to be carried to another part of the mill, it was the duty of plaintiff to do so. In the effort to make the transfer of this particular load, he says he took hold of the handles, lifted the buggy so the legs would clear the floor and began to pull it forward. Continuing, he says: "As I gave it a jerk — the place is rough there — and my feet slipped and I slipped down and hit on that concrete."
This version of the accident is unlike the version set out in the petition, wherein he says while attempting to move the buggy "it suddenly jerked him", etc.
He immediately arose, completed the task, then ascended a flight of steps to the next floor, a distance of about eleven feet, and informed workmen there he had hurt himself. He stayed on the job and did some work until the shift changed at 8 o'clock a.m. Plaintiff did not, at that time, report the accident to the First Aid Station on the mill grounds, but went home. He knew the defendant's rules require that all accidents at the mill be reported to the First Aid Station. He did this when injured some months before this time. He returned to work forty-eight hours later and worked eight hours, but complained of pain in his back and left leg. He did not thereafter report to work.
On September 24th plaintiff reported to Mrs. Hodges, nurse in charge of the First Aid Station, and stated to her that his back was hurting him, but he did not tell her of the accident upon which alleged cause of action is based. She knew he had been absent from work a few days and told him to go to Dr. J.Q. Graves, defendant's regular physician, whose office is in the City of Monroe, a few miles away, and be examined. He did not do this but on October 6th he again saw Mrs. Hodges at the Station, but she says he only inquired about a compensation payment he contended was due him. He was informed by Mrs. Hodges that it would be necessary for him to be examined by Dr. Graves before his claim for compensation could be considered. He stated then that he had been going to Dr. Lambert of Farmerville, Louisiana, for medical treatment. However, on that day he did report to Dr. Graves and was examined by him. Dr. Graves found no objective symptoms of pain or injury in the region whereof plaintiff complained. He pronounced him to be in good physical kilter and advised him to resume work. Plaintiff did not tell Dr. Graves about having had an accident on September 20th, but did tell him that Dr. Lambert was treating him for rheumatism of the back. Not having informed Dr. Graves of the alleged accident, naturally, the doctor did not at that time have X-rays made of him. In view of Dr. Graves' inability to find any cause for the pain and asserted disability of which defendant complained, compensation payments were refused him. Employment of counsel soon followed and this suit was filed. *Page 379 
On February 13th plaintiff's counsel sent him to Dr. C.H. Mosley, who owns and operates a clinic in the City of Monroe, for examination, and to be X-rayed. This was done and on April 10th other pictures of that part of plaintiff's body from which the asserted pain emanated, were made. Plaintiff gave to Dr. Mosley a history of an accident on September 20th. Dr. Mosley supervises the making of his own X-rays and interprets them. He testified in part as follows, to-wit:
"Q. Would an injury to his spine, that you concluded he had, have affected his legs, as he complained? A. Yes, sir.
"Q. How would it do that, Doctor? A. By pressure on a nerve or within the spinal cord or without.
"Q. What evidence, if any, did you find supporting his complaint of pain and injury? A. The way he walked and the spasm of the muscles of his back and his attitude generally.
"Q. What did you find from your X-rays, Doctor? A. I found a fracture and a dislocation of the lamina, between the third and fourth lumbar vertebrae, and a thinning out of the fourth lumbar vertebra on the side where the lamina is fractured.
"Q. Doctor, would that kind of injury cause pain, in your opinion, in the back and as he complains of in his legs? A. Yes, sir.
"Q. Could he have received such an injury as that from the accident which he described to you? A. Yes, sir.
"Q. Doctor, is it possible for a man to have a back injury that would be disabling over a long period of time without having any further injury disclosed by an X-ray? A. Positively."
He was certain plaintiff was disabled to do manual labor or other heavy work.
Dr. H.V. Collins physically examined plaintiff a few days prior to the trial of the case. He did not examine the X-rays made by Dr. Mosley, but did testify that he found partial paralysis of the left leg and presence of pain in that member; also tenderness and some enlargement of the lower vertebrae, and where the sacrum joins with the hip of the left leg. He is of the opinion that plaintiff is unable to do hard work and that he would never fully recover from his present disability, which he believes, is due to the alleged accident. Dr. Collins gave the following testimony while on cross-examination, viz:
"Q. Doctor, is it possible for a man to have, from a jerk or a strain or a fall, an injury to his muscles and ligaments or nerves of his back without bone injury? A. Without the bones being broken, hardly. It won't last long unless the bones are seriously injured or fractured."
This opinion does not coincide with that of Dr. Mosley on the same subject matter.
Dr. D.M. Moore who is now and has been head of the Department of Radiology at the St. Francis Sanitarium in Monroe, for the past twenty years, made X-ray pictures of plaintiff on February 6th and rendered written report thereon. However, these pictures were misplaced by someone and could not be found for use as evidence on the trial of the case. Dr. Moore was not permitted to testify as to what the pictures did or did not disclose. But he was presented with the pictures made by Dr. Mosley and asked to interpret them. His interpretation is wholly at variance with that of Dr. Mosley. He testified that the plates reveal a good general alignment of the lumbar vertebrae and lumbo-sacral region. He is positive that these pictures did not reveal a fracture or other injury to any part of the bones of the mentioned regions. He did observe some slight hypertrophic changes in the bodies of the second and third lumbar vertebrae. Such changes, he testified, are common in men above forty years of age who farmed or did other heavy work for a livelihood.
Dr. A. Scott Hamilton, who specializes in orthopedic surgery in the City of Monroe, and who has had unusual and varied experience in that line of surgery, testified on behalf of defendant. He examined plaintiff in February, 1946, and sent him to Dr. Moore to be X-rayed. On account of the loss of these films he was not allowed to testify to his interpretation of them. He was presented with and interpreted the pictures made by Dr. Mosley and agreed *Page 380 
fully with Dr. Moore in his interpretation of them. He sharply disagreed with Dr. Mosley as to a fracture and/or dislocation of the lamina between the third and fourth lumbar vertebrae, and added that such pathology is an anatomical impossibility and gave reasons for his opinion.
Dr. Lambert who treated and prescribed for plaintiff immediately after the alleged accident was of the opinion that he was not then suffering from any bone injury, but from bruises to the flesh and tissues over and about the lumbo-sacral region. He found no objective symptoms of the pain of which plaintiff complained and was certain he was not permanently disabled. This physician treated plaintiff for ulcers of the stomach beginning in January, 1944, and continued to do so off and on until the time of the alleged accident. On account of this ailment he says plaintiff "hasn't been able to do much hard labor" and adds that "his stomach is better, his back worse", according to what he says.
A careful study and consideration of all the testimony in the case, bearing on the subject, convinces us that plaintiff does not suffer from a fracture of or other injury to any part of his vertebrae, nor of any bone or bones of the lumbar or lumbosacral region. Dr. Mosley in his interpretation of the pictures made by him is flatly contradicted by the interpretations of Drs. Moore and Hamilton who examined and read the same pictures.
Assuming, as we do, that all of these doctors are of equal credibility and ability and were entirely honest and conscientious in their testimony, the question as to fracture or other bone injury, being one of fact, turns simply upon a preponderance of the evidence bearing thereon. The preponderance is clearly with defendant. We know that ofttimes unlooked for and unexpected injury results from an ordinary fall of some kind, but in this case, from plaintiff's own version of the accident, we would be greatly surprised to know that any bone or bones or parts thereof were fractured or otherwise injured. He simply slipped backward and broke the weight of the fall by the use of his hands. He landed on his buttocks which served as a cushion to protect the bones, joints, etc. within.
Dr. Collins' testimony, quoted above, supports the contention that unless there is fracture or other injury to bones, injury to muscles, tissues, etc. caused by trauma, soon disappear. We have found that there was no fracture or other injury to plaintiff's vertebrae or other bones. It is logical then to further find, as we do, that the pain and disability of which he complains, if it exists, results from pathology having no relation to or connected with the alleged accident. We do not know, but it is possible the ulcerated condition of his stomach may be at the bottom of his complaints.
Some friends of plaintiff and members of his family gave testimony to support his profession of pain and disability to work. Not one of them referred to the fact that he was suffering from ulcerated stomach, which in the past had prevented him from doing farm work and other work requiring hard labor. For two years prior to the alleged accident plaintiff was being treated for this malady by Dr. Lambert. This stomach trouble and the doctor's treatment thereof crept out in the doctor's testimony. This lay testimony is not sufficient to supply to plaintiff's case the weight necessary to convert failure into success.
Conceding that plaintiff did have an accident of some sort at the time and place alleged by him, he has failed to prove that the disability of which he complains, if it in fact exists, resulted therefrom. We understand that the trial judge simply held that plaintiff had failed to make out his case; and in this ruling we concur.
For the reasons herein assigned, the judgment appealed from is affirmed at the cost of the plaintiff. *Page 381